RECEIVED
USDC, CLERK GREENVILLE, SC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

2018 NOV 20 PM 2:28

| | |
|---|---|
| SMT ~~Sarah Marie Thomas~~, Gary Thomas, Ferris Harvley, ~~[redacted]~~ SS LB ~~[redacted]~~, Plaintiffs, <br><br> vs. <br><br> South Carolina Department of Social Services, Porcha Moore, Hannah Purnell, Gail Henson, Patricia Agger, Patience Johnson, Avery Martin, Susan Alford, Pam Bryant, Katie Whaley, Rosemerry Felder-Commander, Mindy Zimmerman, Matthew P. Turner, Joan Meacham, Defendants. | **CIVIL RIGHTS COMPLAINT** <br> *(WITH JURY DEMAND)* <br> *42 USC §1983, §1985, §1986* <br><br> Requesting Emergency Injunctive Relief |

## I.   Parties:

SMT ~~[redacted]~~, age 8, (hereinafter "S~~[redacted]~~") suffers from post-traumatic stress disorder (PTSD) as a result of being victim to physical abuse from a foster parent while unlawfully detained in the custody of the South Carolina Department of Social Services.

Plaintiff Ferris Harvley (hereinafter "Ferris") is a disabled, indigent mother, aggrieved by the kidnapping of her children by defendants and seeking injunctive relief in the form of an order that Plaintiff's children (Plaintiffs ~~[redacted]~~ LB and ~~[redacted]~~ SS) be returned to her custody without further interference from the defendants or persons or entities acting in concert with the defendants.

Plaintiff Gary "Zak" Thomas aggrieved father persecuted by Sexist DSS personnel injured by all events described herein.

Plaintiff ~~[redacted]~~ LB (hereinafter "~~LB~~") is Ferris' 15-year old son, and sibling to Plaintiff ~~[redacted]~~ SS.

Plaintiff ~~[redacted]~~ SS (hereinafter "~~SS~~") is Ferris' 16-year-old disabled, "special needs" daughter.

Defendant South Carolina Department of Social Services employs each of the above named defendants and is ultimately responsible for the unreasonable infringements upon the rights of the Plaintiffs.

*THOMAS v. SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES -- 1*

Defendant Porcha Moore, sued in individual and official capacities, and as a co-conspirator, was at all times relevant to this Complaint a caseworker for Defendant South Carolina Department of Social Services in and for Laurens County, South Carolina.

Defendant Patricia Agger, sued in individual and official capacities, and as a co-conspirator, was at all times relevant to this Complaint a caseworker for Defendant South Carolina Department of Social Services in and for Laurens County, South Carolina.

Defendant Patience Johnson, sued in individual and official capacities, and as a co-conspirator, was at all times relevant to this Complaint a supervisor to Defendant Moore and for Defendant South Carolina Department of Social Services

Defendant Avery Martin, sued in individual and official capacities, and as a co-conspirator, was at all times relevant to this Complaint the director for the Laurens County Department of Social Services.

Defendant Susan Alford, sued in individual and official capacities, and as a co-conspirator, was at all times relevant to this Complaint the Statewide Director for Defendant South Carolina Department of Social Services.

Defendant Pam Bryant, sued in individual and official capacities, and as a co-conspirator, was at all times relevant to this Complaint assigned to the investigation into corruption of Defendant South Carolina Department of Social Services, and is also employed by with Defendant South Carolina Department of Social Services.

Defendant Katie Whaley, sued in individual and official capacities, and as a co-conspirator, was at all times relevant to this Complaint a supervisor ███████████ for Defendant South Carolina Department of Social Services

Defendant Rosemerry Commander, sued in individual and official capacities, and as a co-conspirator, was at all times relevant to this Complaint employed by the judiciary serving as a Family Court Judge.

Defendant Mindy Zimmerman, sued in individual and official capacities, and as a co-conspirator, was at all times relevant to this Complaint employed by the judiciary serving as a Family Court Judge.

Defendant Matthew P. Turner, sued in individual and official capacities, and as a co-conspirator, was at all times relevant to this Complaint employed by the judiciary serving as a Family Court Judge.

## II.   Basis for Jurisdiction:

<u>42 U.S.C. §§1983, 1985, 1986.</u> Each defendant, and all defendants, while acting under color of state law, or conspiring with defendants acting under color of state law, have deprived the Plaintiff's herein of their Fourteenth Amendment rights to not "be deprived of life, liberty or property without due process of law."

<u>Fourteenth Amendment</u> to the United States Constitution, its Due Process Clause, guaranteeing each Plaintiff and all Plaintiffs that they will not "be deprived of life, liberty or property without due process of law."

## III.   Statement of Claim/Statement of Facts:

1. At all times preceding the date of May 25, 2018 Plaintiffs were living together as a family unit, in suitable conditions, Ferris having sole legal custody of L▇ and S▇ as a fit and functional parent, Ferris' live-in fiance of more than one year, Gary Thomas (hereinafter "Zak"), sharing parental responsibilities per Ferris ' wishes.
2. On May 25, 2018, Defendant Porcha Moore became officially involved in the lives of the Plaintiffs, ordering Ferris to temporarily find alternative living arrangements for her minor children, L▇ and S▇, or be arrested and lose L▇ and S▇ permanently to foster care.
3. Defendant Moore was able to confront Ferris alone and coerced her to involuntarily send L▇ and S▇ to the homes of Defendants Henson and Purnell, Defendant Moore thereby assuming full control of L▇ and S▇, labeling said control "emergency protective custody," contrary to Ferris' wishes and absent an affirmative finding of abuse or neglect through mandatory investigation conducted pursuant to South Carolina Code of Laws, §63-7-640
4. On or about May 29, 2018, Defendant Moore and another case worker visited the Family apartment, unsuccessfully attempting to engage Ferris alone and unsuccessfully attempting to manipulate "consent" to DSS interference through a "safety plan".
5. Gary Thomas dismissed Defendant Moore, terminating the home visit due to Moore becoming verbally abusive and threatening after he and Ferris politely refused consent to "treatment plan" development and drug screening. At this time, Defendant Moore had not approached the Family Court for legal authorization to have assumed and to maintain custody and control of Ferris' children, South Carolina statutes mandating judicial emergency protective custody extension orders within 24 hours of removal. Defendant Moore had, in effect, kidnapped Ferris' children, L▇ and S▇.
6. Instead, Defendant Moore implemented a false Safety Plan with respect to Plaintiff L▇ B▇, false because it was not signed by a parent or legal custodian indicating consent to the plan. State law requires a parent's participation in a Safety Plan and, if

*THOMAS v. SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES -- 3*

refused, DSS may petition the Court for authority to intervene and/or remove children upon a showing from the department that abuse or neglect has occurred against a named, identified child and by whom the abuse or neglect was inflicted.

7. On May 31, 2018, Defendant Moore continued to threaten Ferris with foster care placement of her children if Ferris did not comply with Moore's orders regarding control of Ferris' children. Moore's text messaged threat read:
    "Hey I need you to call me. I'm getting information that you are not taking S▮ to Gail and if that's the case S▮ will be in foster care tomorrow"
8. In response to the aforementioned threat, Gary Thomas returned the text:
    You have no grounds to be threatening further interference in the lives of Ferris and her children. You have no grounds or authority to demand anything of Ferris where her children are concerned. Fabricate any grounds and you will answer for it in a court not ruled by a family court judge.
9. Also in response, Ferris called Defendant Moore and demanded a court order to back Moore's actions and threats, only to receive more unlawful threats and harassment from Moore, as well as Moore's continued exercise of custody and control over Ferris' children.
10. Defendant Moore implemented another false Safety Plan with respect to Plaintiff S▮ S▮ and that was completed prior to S▮'s being transported to the home of Gail Henson, where Ferris was ordered to take S▮.
11. Defendant Moore assumed unlawful custody and unlawful control over Plaintiff's children and maintained such from May 25, 2018 until June 19, 2018 without court authority and without seeking court authority by initiating a removal action and filing a petition required by S.C. Code of Laws Sec. 63-7-1650 and 63-7-1660 and by the use of intimidation against Ferris, isolating Ferris from Zak with the intent to intimidate her into compliance.
12. On June 5, 2018, Plaintiffs Ferris and Zak contacted Greenville County Sheriff's Office requesting police assistance in the retrieval of S▮ and L▮ from the home of George and Mary Jane Streets located in Greenville County, South Carolina. One Greenville County Deputy responded and is heard to say on the audio recording from that encounter refused to help Plaintiff Ferris retrieve her children, saying that S▮ and L▮ were in DSS custody, that even though Ferris had not signed it a Safety Plan was in place, and that the Safety Plan said that Plaintiff Ferris was not permitted to have any contact with Sara and L▮ at all.
13. On June 14, 2018, Plaintiffs Ferris and Zak made another attempt to retrieve S▮ and L▮ from Hannah Purnell's home, also located in Greenville County, South Carolina. Several officers, one of which was a Sergeant, responded to the home of Defendant Hannah Purnell, also falling under the impression that the children had been removed by DSS due to the Safety Plan mentioned in paragraph 6 (above).
14. On June 15, 2015, Plaintiff filed in the Laurens County Family Court a Complaint for Custody and Return of Custody, clearly alleging that Moore had been using coercive tactics, threatening to get a court order if non-compliant with demands; Ferris attached to the Complaint a screenshot of the text message threats mentioned in paragraph 7

*THOMAS v. SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES -- 4*

(above) and identified the action as a " DSS Removal Action" at the title of the document.

15. Plaintiff Ferris's Complaint for Custody and Return of Custody, requesting an emergency hearing, is attached hereto and Incorporated herein by this reference.
16. On May 31, 2018, Plaintiff emailed Defendant Martin at avery.martin@dss.sc.gov the following:

> Dear Mr. Avery Martin:
>
> I am writing to make you aware that a member of your staff has expressed an intent to usurp my parental authority by going to interview my 15 year old minor child against his consent and mine. Portia Moore indicates there is a statute authorizing her to override my parental authority, although she could not cite the statute for my reference.
>
> Attached is a recording of my 15 year old minor son in which he indicates he does not wish to be interviewed by DSS officials.
>
> Please be aware that members of your staff have been using intimidation and bullying tactics in order to acquire my consent for their intrusion into my family affairs. Thus far, there have been threats to arrest me (without just cause), to have police put my boyfriend on trespass notice from my apartment complex (also without just cause) as well as emergency removal of my children, although no grounds exist for such.
>
> DSS Involvement in my family life is both unwarranted and unwanted. There is no threat of imminent harm to either of my children, nor has there been any harm inflicted beyond the fear and anxiety that has been instilled by the unlawful intrusion into our lives by your staff. I am insisting that you order your staff to cease and desist all communication and harassment with myself, my children, my family, my neighbors and any other individual associated with my family unit.
>
> There will be no consent forthcoming from any of us to any further involvement of your agency in our lives. Additionally, any *implied* consent that may have construed from any cooperation thus far was misconstrued and any cooperation thus far has been the result and product of coercive tactics employed by your staff. Furthermore, there will be harassment charges and litigation to follow any further intrusion into my family life, however minute.
>
> Thank you in advance for your professional exercise supervisory authority and the regulation of the behavior of your subordinates.

Very truly yours,
Ferris Harvley
864-923-2221

17. Defendant Moore violated Ferris' wishes, thereby violating the privacy rights of Plaintiffs S████ S██████ and L███ B███████ by interrogating both of the minor children and arranging for them to be probed by mental health professionals, the results of which were disclosed to persons other than the Plaintiffs.
18. On June 27, 2018, Plaintiff emailed Defendant Martin and Defendant Susan Alford at susan.alford@dss.sc.gov the following:

Local and Statewide Directors:

> By knowledge of and failure to correct Porcha Moore's kidnapping of my children, you are equally responsible for those unlawful actions. While you *will* be held accountable, each in your individual capacity, through our anticipated 42 U.S.C. 1983 action, I can only pray that you are held criminally liable also. It is beyond time for people in your ridiculous salary brackets to be punished for your deliberate indifference to the destruction DSS brings to far too many families and children. Kidnapping for the benefit of state financial gain. Sad, sick and long overdue for exposure.
>
> Your reach into the family courts and corruption of its judges is due to your ongoing violation of our constitution's separation of powers clause (Article 1, Section 8), a practice which was addressed by our Supreme Court in connection with solicitors controlling the general sessions docket in *published opinion State v. Langford*, Opinion No. 27195.
>
> I believe that, with this fabricated case you all have insisted with pursuing for the state's financial gain, you have also given us standing to challenge your unlawful practice of working your select judges onto the bench to satisfy legislative requirements of *judicial* backing in the abductions the agency partakes in routinely. *SCDSS v. Massey*, looks good for the judiciary, but in all reality, DSS has found its solution to the checked arrogance displayed before the appellate court in that case. *Select your own judges.* Simple answer to the problem *Massey* could have created for you.
>
> But when judges the likes of Zimmerman blatantly grant emergency hearings for the sole purpose of "legalizing" DSS kidnappings (there being no "abuse or neglect" upon which to issue orders depriving parents of their right to the custody and control of their own children) and basing such preposterous action on factors clearly and judicially declared irrelevant, after refusing the affected

*THOMAS v. SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES -- 6*

parent any opportunity to present evidence or witnesses at the hearing sought by that parent herself on an emergency basis, the exposure DSS and its self-appointed judges is long overdue for is just about at hand.

The proper course of action, where each of you are concerned, would have been to take heed to report of the illegal conduct of Porcha Moore, as clearly expressed in our earlier emails. Yet, to do so would have disturbed the agency's hidden financial agenda. Supervisor liability and clearly established law pin you both, in your individual capacities of course, to an award of damages to the mother whose children you, on behalf of your corrupted, child-abusing agency. I think punitive damages, when a jury gets to hear the evidence your Zimmerman refused to allow into evidence on June 19th, 2018, could reach into the millions when it is disclosed to that jury the amount of revenue your agency receives for each kidnapped child shuffled through your system on a daily basis with the help of your prized Porcha Moores and Mindy Zimmermans.

So take that "mental injury" to the bank!

Yours Truly,

Ferris Harvley and
Advocate Fiance,
Gary Thomas

19. Plaintiff didn't receive a response from either email.
20. Plaintiffs Zak and Ferris emailed several other times, copying all the individuals named as defendants herein with the exception of Defendants Hannah Purnell and Gail Henson, complaining of the actions of defendant more and the illegal nature of conduct, describing such thoroughly and repeatedly.
21. On June 19, 2018, Zak was forbidden entrance into the hearing due to Porcha Moore having insistently excluded Zak from all other communications prior, claiming to do so because Moore was concerned about Zak being abusive, controlling and speaking for her instead of letting her make her own decisions.
22. Defendant Moore had been able to intimidate Plaintiff, aware that Plaintiff was disabled due to seizures resulting from severe panic/anxiety attacks, until Zak got involved and demanded that the threats coming from Moore cease and that Moore get the court order that was required for child removal.
23. Defendant Zimmerman barred Zak from the courtroom for the sole purpose of allowing Ferris to be taken advantage of at the hearing. Defendant Zimmerman did not inform Ferris of any right to appointment of counsel. Defendant Zimmerman would not allow Ferris to present any evidence in support of her Complaint. Zak being barred from the courtroom was the denial of witnesses for Ferris.

24. Defendant Zimmerman ordered that Zak be barred from having any contact whatsoever with the children, although there were no allegations that he had done them any harm or that he reasonably might. Defendant Zimmerman indicated that her decision to remove custody of Ferris' children from her, officially, was partially due to Plaintiff's seeking an order granting joint custody to Zak in order to ensure he could continue to protect their interests as he had done since his introduction to the family over a year prior.
25. Defendant Zimmerman denied Ferris a reasonable opportunity to be heard on the Complaint that Zimmerman concluded warranted an emergency hearing, having granted to hearing on the basis of the Complaint.
26. Defendant Zimmerman's conduct at the hearing was unlike that of any judge, failing to sanction DSS authorities for the unlawful conduct alleged in the Complaint and undenied by DSS officials, instead rewarding that conduct by granting the agency's request that custody of Plaintiff's children be officially awarded to individuals not otherwise having any right to custody of the children, and who only had physical custody due to Moore's initial threats of the children's placement in foster care, due to the refusal of defendants Deputy Vaughn, Unit A28, Deputy Freeman, Unit A27, Deputy Miller, Unit A37, of the Greenville County Sheriff's Office to retrieve Plaintiff's children on June 14, 2018 when summoned to assist in their retrieval, and due to the various threats from law enforcement when they were summoned to assist in the legal retrieval of Plaintiff S▓▓ and L▓▓.
27. Defendant Zimmerman's conduct was entirely contrary to the State's Judicial Oath, contrary to state judicial canons of ethics, and contrary to acceptable standards for judges, generally. Due process protections are an entitlement to parents whose children's custody is being considered for transfer from the parent against the parent's consent, but none of the procedural due process protections enumerated under code §63-7-1650 and/or §63-7-1660
28. Defendant Zimmerman authorized DSS to remain as a Defendant to the action, labeled the action a "private action" which is unknown in South Carolina Rules of Civil Procedure and to which no procedures apply. Defendant DSS is not permitted, under South Carolina law, to intervene in the family unit, to offer protective services, with or without removing children from their homes, unless it file a petition requesting authority from the family court to intervene, providing the court with findings supported by a preponderance of the evidence that a child has been abused or neglected and cannot be protected from further harm without intervention from DSS or removal if necessary.
29. The State Supreme Court, in <u>SCDSS v. Randy S.</u>, 390 S.C. 100, 700 SE 2d 250 (2010), has expressly identified the two statutory procedures through which DSS may become involved in family affairs:

> DSS has the statutory duty to investigate all reports of suspected child abuse and neglect. S.C.Code Ann. § 63–7–900 (2010). Upon investigation, if DSS determines a preponderance of the evidence supports the conclusion a child is abused or neglected, it may petition the family court for authority to offer services with or without removal of the child from the parents' home.

30. There is nothing found in South Carolina law that authorizes DSS to be involved in family affairs without a court order or parental consent. Court order is only upon the showing of abuse or neglect as defined under code §63-7-20(6).
31. Defendant Zimmerman did not state that there had been any findings by DSS that Ferris or Zak had abused or neglected either child or that they put the children at "substantial risk of physical injury or mental injury" as those terms are defined for DSS Removal statutes, found at §63-7-20 (16)("mental injury) and §63-7-20(20)("physical injury") of the South Carolina Code of Laws.
32. Defendant Zimmerman did not state that there had been any findings by DSS that either or both of the children would be at risk of imminent harm if they were returned to Ferris' physical custody.
33. Defendant Zimmerman issued an Order for Ferris and Zak to submit to drug screening immediately, although there had been no indication given during the proceedings that any drug use may have been in any way connected to allegations of abuse or neglect.
34. By classifying the Complaint as the initiation of a private action, although all reasonable and credible evidence showed that it was in fact a DSS removal action, Defendant Zimmerman created a situation where DSS could not be held accountable to or expected to comply with any statutory provisions regarding DSS intervention/removal proceedings, because DSS removal statutes don't apply to private actions, therefore neither do the procedural due process protections guaranteed a parent under those statutes.
35. Although DSS removal statutes and DSS intervention statues require a judicial finding of abuse or neglect, before a child can be removed from a home or from custody, Defendant Zimmerman permitted DSS to remain in the lives of the Plaintiffs without first meeting its evidentiary burden, thereby granting intervention unlawfully and stripping Ferris of all parental rights generally safeguarded by the legislative scheme.
36. Defendant Zimmerman transferred custody away from Ferris over her objections and without any showing, from DSS or any other party, that Ferris was not fit to care for her children.
37. By officially transferring custody to Defendants Purnell and Henson, giving full control of S███ and L███ to Defendants DSS, Defendant Zimmerman issued an Order that was intended to legalize/further the kidnapping of S███ and L███, exempting Defendant Moore and Defendant Commander from prosecution and leave Ferris without any legal recourse for challenging the legitimacy of the proceedings.
38. Upon exiting the courthouse, Ferris was in the middle of an anxiety attack, visibly shaken by the unorthodox manner in which she was treated in response to a plea to a Family Court for the appropriate return of her unlawfully seized children.
39. Defendant Moore approached Ferris and Zak, laughing as she handed drug screening referrals for them both to Zak, laughing and instructing them to comply immediately.
40. Defendant Moore later sent Zak a text stating "you have your court order on your expense".

41. Ferris' condition prompted Zak to escort Ferris to the emergency room of the Laurens County Hospital in the event she was to be overtaken with stress/anxiety induced seizures.
42. Ferris advised, after four hours, that she felt well enough that any seizures she may have would not likely require hospitalization.
43. Zak returned with Ferris to the hospital later that same evening concerned enough that he felt it necessary to be in close proximity to the hospital.
44. Ferris' anxiety attacks came and went throughout the following months, the more alarming incidents occurring while Zak was engaged in activities or communications related to seeking the return of his own daughter, S██ M██ T██████ who had been the subject of litigation in Anderson, having been placed in foster care through a maliciously fraudulent Anderson County DSS removal action, initiated on the basis of what the agency knew to be perjured testimony of Zak's ex-wife and Defendant Katie Whaley.
45. Ferris and Zak later filed a *Motion to Vacate* Zimmerman's Order on multiple grounds, including the Order's absence of findings that there has been an abused or neglected child.
46. The Order also fails to state that there has been a Placement Plan approved by the Court, while the law mandates that If the Court orders that a child be removed from the custody of the parent or guardian, the Court must approve a placement plan.
47. The Order fails to set forth a date within 35 days, for the holding of a Merits Hearing as is required by §63-7-1680.
48. The Order signed by Defendant Zimmerman, transferring custody of Ferris' children to others, failing to mandate a placement plan, failing to set a merits hearing, and failing to set forth findings of fact and conclusions of law that include findings that by a preponderance of the evidence there is named an abused or neglected child and that the primary caretaker is responsible for that abuse, was clearly unlawful and would have been known to be unlawful to any judge overhearing child custody/child abuse cases.
49. The Order signed by Defendant Zimmerman is void on its face.
50. Zimmerman's Order is also void because due process minimum standards require some showing of parental unfitness, through reasonably trustworthy evidentiary hearings, parents necessarily afforded the opportunity to present evidence and witnesses in their defense, and to be heard by a non-biased, reasonable, judge, all of which has been denied Plaintiffs by declaring that the action was a private action and one subject to no rules or guidelines
51. In roughly thirty minutes Defendant Zimmerman, acting in the favor of DSS, issued an order against Ferris that was obviously intended to assist the agency in the kidnapping of her children, effectuating the formal transfer of custody from Ferris (who had legal custody and was not declared, alleged to be, or found to be unfit) to individuals (neither of which requested custody) not within the jurisdiction of that Family Court, the children also being outside of the Court's jurisdiction. This was done contrary to any procedures outlined by statute or court rule, and was directly in conflict with the South Carolina

Court of Appeals decision in SCDSS v. Randy S., 390 S.C. 100, 700 SE 2d 250 (2010) as stated above.

52. No judge, lawyer, or anybody with legal knowledge could possibly believe that the appointment of DSS as a representative of individuals in any private child custody action, after they've violated all laws pertaining to them protecting children, after they've kidnapped children, would be in the best interest of the children at issue.
53. No judge could possibly or reasonably believe that the legislature intended for there to be instances where DSS could become involved in family affairs not through any statutory guidelines governing the agency's conduct or protecting the children and parents interests with established time frames, procedures, and defined evidentiary standards.
54. Ferris and Zak later filed a *Motion to Vacate* Zimmerman's Order on multiple grounds, including the Order's absence of findings that there has been an abused or neglect a child, and the complete departure from DSS Removal action statutory guidelines.
55. On November 9, 2018, Defendant Turner was called upon to rule on the Motion to Vacate Defendant Zimmerman's Order, citing the Court of Appeals decision in SCDSS v. Randy S:

> Father contends Children were improperly removed from his custody and the family court *erred in failing to follow the proper statutory procedure following removal.* Father argues as a result the family court erred in finding the case warranted both intervention and removal when DSS had only filed an action for intervention. We agree.
>
> DSS has the statutory duty to investigate all reports of suspected child abuse and neglect. S.C.Code Ann. § 63–7–900 (2010). Upon investigation, if DSS determines a preponderance of the evidence supports the conclusion a child is abused or neglected, it may **petition** the family court for authority to offer services with or without removal of the child from the parents' home.

Pursuant to section 63–7–1650(A) of the South Carolina Code (2010), DSS may "petition the family court for authority to intervene and provide protective services without removal of custody if [DSS] determines by a preponderance of the evidence that the child is an abused or neglected child and that the child cannot be protected from harm without intervention." The family court is then required to hold a hearing within thirty-five days. See S.C.Code Ann. § 63–7–1650(C)(2010). After the hearing, the family court may intervene and provide protective services if "the allegations of the **petition** are supported by a preponderance of the evidence including a finding that the child is an abused or neglected child as defined in [s]ection 63–7–20 and the child cannot be protected from further harm without intervention." S.C.Code Ann. § 63–7–1650(E) (2010). Child abuse or neglect occurs when a parent "inflicts or allows to be inflicted upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child, including injuries sustained as a result of excessive corporal punishment." S.C.Code Ann. § 63–7–20(4)(a) (2010).

Section 63–7–1660(A) of the South Carolina Code (2010) grants DSS authority to **petition the family court to remove a child** from custody of a parent if DSS "determines by a preponderance of evidence that the child is an abused or neglected child and that the child cannot be safely maintained in the home in that he cannot be protected from unreasonable risk of harm affecting the child's life, physical health, safety, or mental well-being without removal." As with intervention, the family court is also **required to hold a hearing within thirty-five days** of receipt of the petition to determine whether removal is necessary. S.C.Code Ann. § 63–7–1660(D) (2010). The family court **shall not** order that a child be removed from the custody of the parent **unless** the allegations in the petition are supported by a preponderance of evidence including a finding that the child is an abused or neglected child as previously defined and "that retention of the child in or return of the child to the home would place the child at unreasonable risk of harm affecting the child's life, physical health or safety, or mental well-being and the child cannot reasonably be protected from this harm without being removed." S.C.Code Ann. §63–7–1660(E)(2010). If the family court removes custody of the child, the court's order shall contain a finding of whether DSS made reasonable efforts to prevent removal and a finding of whether continuation of the child in the home would be contrary to the welfare of the child. S.C.Code Ann. § 63–7–1660(G) (2010). Pursuant to section 63–7–1660(G)(1)–(4):

> The order shall state: (1) the services made available to the family before the removal of the child and how they related to the needs of the family; (2) the efforts of the agency to provide these services to the family before removal; (3) why the efforts to provide services did not eliminate the need for removal; and (4) whether the efforts to eliminate the need for removal were reasonable...

Within twenty-four hours after a child is taken into EPC, DSS is required to conduct a preliminary investigation to determine whether EPC was proper and whether a means to avoid removal from the home exists. S.C.Code Ann. §63–7–640 (2010). If DSS determines probable cause exists that a "child's life, health, or physical safety is in imminent and substantial danger" because of abuse or neglect, DSS may assume legal custody of the child. S.C.Code Ann. §63–7–660 (2010). **_DSS is then required to initiate a removal proceeding pursuant to section 63–7–1660 on or before the next working day after initiating the investigation._** S.C.Code Ann. § 63–7–700(B)(1) (2010). The family court is then **required** to hold a probable cause hearing within seventy-two hours of the time the child was taken into EPC and conduct a merits hearing within thirty-five days. S.C.Code Ann. §63–7–710(A), (E) (2010).

If a child is removed from the home, the family court **must approve a placement plan,** which DSS must submit in writing to the family court at the removal hearing or within ten days after the removal hearing. S.C.Code Ann. § 63–7–1680(A)(2010). The family court is then required to conduct a permanency planning hearing "no later than one year" following removal of a child. S.C.Code Ann. § 63–7–1700(A) (2010). "At the initial permanency planning hearing, the court shall review the status of the child and the progress being made toward the child's return home or toward any other permanent plan approved at the removal hearing. The family court's order is required to make **specific findings** in accordance with this section." Id

[1]   Initially, we note that pursuant to section 63–7–1650, DSS brought this child abuse and/or neglect proceeding as an action for intervention. At the time DSS filed its complaint, Children were not in Father and Mother's custody, and at no point did DSS move to amend its complaint to seek relief pursuant to the removal statute, section 63–7–1660.

When law enforcement arrived at Father's home, rather than have law enforcement take Children into EPC, Father agreed to place Children with relatives. Subsequently, Father filed a motion requesting the family court return Children to his custody, **arguing Children were improperly removed from his home when DSS did not file a petition for removal.** Despite DSS's contention that this was only an intervention action, we find the evidence supports a finding that Children were removed from Father's custody.

> [2]. As a result, we find the family court erred in granting custody of Children to Aunt and allowing DSS to close its case because **intervention does not contemplate placement of children with third parties.** Instead, the statute specifically states its purpose is to "intervene and provide protective services without removal." § 63–7–1650(A) (emphasis added). Because DSS in actuality initiated a removal action instead of an intervention action, **it was required to follow the statutory procedures for removal and file a petition with the family court** after Children were taken into EPC. Then, the family court would have conducted a probable cause hearing within seventy-two hours and
>
> determined whether probable cause existed for DSS to assume legal custody of Children. If the family court determined probable cause existed to remove Children from the home, a merits hearing should have been conducted within thirty-five days. Here, Children were out of the home for almost eleven months before a merits hearing was held on April 20, 2007. ***By following the comprehensive scheme outlined in the statutes, Father would have been afforded the safeguards the statutes are designed to provide.***

100 SC at 103-107

56. Despite the appellate court's clarity and its use of mandatory languages, Defendant Turner denied the Motion to Vacate without stating any reason other than it was a private action. Knowing that there had been no hearings or any due process protections normally afforded parents in DSS removal actions, Defendant Turner, also aware that DSS was acting outside of any statutorily defined boundaries and entirely inconsistent with legislative intent, was not performing a judicial act when he denied the Motion to Vacate. Defendants Commander and Agger were at the defense table in a case where all the facts show that DSS was exercising control over Ferris' children, regardless of whether or not they actually had physical custody. There is no mistaking the absurdity in that. It would be absurd also to believe that the legislature had any intent for its laws to be circumvented by improper designation of parties.

57. Plaintiff Ferris and Zak also made a Motion to Dismiss for Lack of Jurisdiction, the children having been in Greenville County since May, the Court's first action in or hearing of the case June 19, 2018 in Laurens County. Pursuant to statutes and court rules the family court had no jurisdiction over the children at issue and therefore had no jurisdiction to order their placement or custody remain with residents of Greenville County who were also outside of the courts jurisdiction. Not addressing the issue of the children being subject to jurisdiction, Defendant Turner denied the Motion to Dismiss for Lack of Jurisdiction.

58. In open court, Zak made an oral Motion to Dismiss for Lack of Evidence. Without opposition from any of the Defendants present, Zak announced that Zimmerman's order contained no findings of abuse or neglect, as required by South Carolina removal statutes. Without opposition from any of the Defendants present, Zak also

declared that Ferris' children had been kidnapped six months prior, their removal effectuated by threats against Ferris, their retention effectuated by falsified Safety Plans that do not and cannot be authoritative absent parent/legal guardian cooperation and participation, which includes a signature.

59. Zak also declared, without objection or opposition, that there had been no findings at any time or even any allegations anywhere in the record that could possibly justify Ferris not having physical custody of her children (although she still had legal custody because there had never been a finding of parental unfitness).
60. Zack challenged Defendant Commander to provide the Court with any reason whatsoever that should preclude Ferris from regaining physical custody of her children. There was no answer from Commander or any of the other Defendants. Defendant Turner did not ask for any answer as he denied the Motion to Dismiss for Lack of Evidence.
61. Plaintiffs' demanded a Final Order from which they may appeal and were denied.
62. Defendant Pam Bryant was assigned to investigate a number criminal actions employed by Defendants Moore, Whaley, Commander in child removal proceedings. Defendant Bryant was assigned the investigations by the Office of the Inspector General after Ferris and Zak both submitted complaints to that office regarding same.
63. Zak identifies DSS supervisor Katie Whaley as one who committed perjury in a sworn Complaint for Removal, and during testimony, at a probable cause hearing set for the removal of his then 6-year-old daughter S▬ M▬ T▬. Zak provided the Office of Inspector General and Defendant Bryant with copies of transcripts in reference to particular statements in the Complaint for Removal that conflicted with one another, could not be harmonized, some that did not exist, and other statements that were intentionally misleading.
64. Zak illustrated how Defendant Whaley has conspired with his former wife Tiffany Thomas to commit perjury to prevent him from receiving custody of S▬.
65. Tiffany committed perjury at in August 31, 2016 Order of Protection hearing, offering the testimony:

> "But Mr. Thomas is an at risk sexual predator on the DSS Central database."

66. Defendant Whaley sat present the entirety of the August 31 2016 Order of Protection hearing, hearing all testimony from Tiffany Thomas and Zak, recording the same, purportedly in furtherance of an investigation that began August 5, 2016. Defendant Whaley's sworn Complaint for Removal recited the above testimony incorrectly, as follows, combined with additional surrounding falsified statements consistent with and in furtherance of concealing Tiffany Thomas' perjury:

> "...Ms.Thomas put up testimony that Mr.. Thomas has previously sexually abused another child and was found guilty to be an "at-risk sexual predator" on the DSS central database."

67. Defendant Whaley knew that Tiffany was committing perjury by making the statement above and edited the statement to lend credibility to Tiffany Thomas perjury and to contribute to Tiffany Thomas assassination of Zak's character without Whaley being confronted with her failure to notify the court as to the veracity of the witness based on personal knowledge.
68. Tiffany Thomas knew that Katie Whaley and David Vickery, both sitting in the courtroom, would know that her statement was perjured. Other perjured statements from Tiffany Thomas went undiscovered and were recited by Katy Whaley in the Complaint for Removal, used on September 2, 2016 to effectuate the taking of and keeping of S███ M███ T███.
69. Defendant Whaley's Complaint contained two other statements, consistent with each other, although falsified entirely, and obviously aimed at interfering with Zak's right to the custody of Sarah.
70. The first statement Whaley fabricated, purportedly derived from testimony Zak gave at the August 31 2016 hearing:

> Mr. Thomas put up testimony that while Ms. Thomas was in law enforcements custody for her charge, he went to the home of Vanessa Chadwick and took S███, violating a court order that reads he may only have supervised visitation.

71. And purportedly from Tiffany Thomas' testimony:

> There was a testimony heard that Mr Thomas has stalked Ms. Thomas and taken the child despite a court order stating he is only allowed supervised visitation

72. PLAINTIFFS RESERVE THE RIGHT TO AMEND THIS COMPLAINT TO ADD ADDITIONAL PARTIES AND/OR CLAIMS AS THE DISCOVERY PROCESS ADVANCES.

**FURTHER, AFFIANT SAYETH NOT.**

## IV.  Relief :

WHEREFORE, Plaintiffs respectfully pray this Honorable Court grant the following relief:

1. Emergency injunctive relief, in the form of Orders commanding the Defendants herein named, and their agents, to cease immediately all offenses continuing to impede upon and violate Plaintiffs' rights as guaranteed by the United States Constitution.
2. Compensatory damages awarded to Plaintiffs in the amount of ten million dollars ($10,000,000) against each defendant and against all defendants.
3. Punitive damages awarded to Plaintiffs in the amount of fifty million dollars ($50,000,000) against each defendant and against all defendants.
4. An award of costs to Plaintiffs for all expenses incurred as a result of this litigation and all incidents herein described.
5. And any and all other relief this Honorable Court deems just and appropriate.

## V.  Certification and Closing

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

**BEING FIRST DULY SWORN**, Gary Z. Thomas deposes and says: I am one of the Plaintiffs named in this case, representing the best interests of all Plaintiffs named in this case, have prepared and proofread this Complaint, attesting the same to be true in its entirety.

Signed this 20th day of November, 2018.

Gary Thomas, Plaintiff pro se

SUBSCRIBED AND SWORN to before me  Savita M. Leak  Notary Public in and for the state of South Carolina. My commission expires: April 28, 2020.

[Notary Seal: NOTARY PUBLIC, My Comm. Exp Apr 28, 2020, SOUTH CAROLINA]